## THE DAVID DUDLEY.

## THE MAGGIE D. MARSTON.

*(District Court, D. Massachusetts.    April 13, 1882.)*

COLLISION—SAIL-VESSELS—RULE OF THE ROAD.

> A schooner close-hauled on the starboard tack, and steering by the wind, approaching a bark coming from an opposite course, with the wind on her quarter, has the right of way, and in case of a collision by the port bow of the schooner with the port quarter of the bark the latter is in fault in not putting her helm to starboard.

In Admiralty.

*F. Dodge,* for the David Dudley.

*L. S. Dabney,* for the Maggie D. Marston.

NELSON, D. J.    Cross-libels for a collision which occurred about 8 P. M. of March 23, 1881, near Middle Ground shoal, in Vineyard sound, between the bark David Dudley, from St. Marc, Hayti, with a cargo of logwood and coffee, for Boston, and the three-masted schooner Maggie D. Marston, from Rockport, Maine, laden with ice, for Portsmouth, Virginia.    The night was dark, without moon or stars, but the air was clear.    The regulation lights of both vessels were properly set and burning, and were plainly distinguishable at a distance of at least a mile.    The bark was on her port tack, heading easterly, with the wind abaft the beam.    She had entered the sound with all her sails set, but before the collision had taken in her mainsail, foresail, staysail, and main royal.    The schooner was on her starboard tack, heading to the westward, under her mainsail, foresail, spanker, and three jibs; but whether close-hauled or not was not in dispute.    The rate of speed of the bark was six knots, and of the schooner four.    The vessels came together in about six minutes after the schooner's light was first sighted from the bark—a mile off. The helm of the bark was put hard to port as soon as the schooner's light was seen.    The schooner kept her course until the collision became inevitable, and she then put her helm hard to port and came up into the wind.    The effect of this was to ease the blow to some extent; but her port bow struck the port quarter of the bark with a glancing blow, from which both vessels sustained damage, the injury to the bark being much the greater.

The case made by the bark was that the wind was blowing a moderate breeze from the N. N. W., the bark heading E. by N.; that the

schooner's red light was first seen bearing half a point over her port bow; that the schooner was heading on a course nearly opposite to that of the bark; that the helm of the bark was at once put hard to port, and she thereupon swung off about five points to leeward; that the schooner made no change of course until immediately before the collision, when it was too late for her to clear the bark, and then bore up a very little, striking the bark almost immediately; and that at no time before the collision was the schooner's green light visible from the bark.

The case made by the schooner was that the wind was from W. N. W., blowing a whole-sail breeze; that she was close-hauled on the starboard tack, steering by the wind; that the green light of the bark was first seen about a mile off, bearing one point over her starboard bow; that the green light alone was visible until the vessels had approached quite close together, and then the bark's red light opened; that immediately afterwards the green light disappeared and the red light only was visible, and continued in sight until the collision; and that she kept her course until she luffed to ease the blow.

I am of opinion that the evidence sustains the contention on the part of the schooner that she was close-hauled on the starboard tack and steering by the wind. This is sworn to by her officers and men, the only persons who have any positive knowledge as to the fact. She was beating through the sound to the westward, against a head wind, and was on her sixth tack after entering the sound from the eastward the previous afternoon. Her previous stretch had been to the eastward, and at the time of the collision she was on her westward stretch, having tacked a short time before near the northern shore of the sound, to the eastward of Nobska light. She had every motive to make all the westing that was possible on this course, and this could be accomplished only by keeping close to the wind. I am also of the opinion that the schooner is right in her contention as to the respective positions of the two vessels. That the schooner kept her course until she luffed to ease the blow was proved by abundant evidence, and was not seriously denied at the hearing. The bark maintains that she was to the leeward of the schooner; that she saw her red light only; that her own helm was put hard to port; and that she fell off from four to five points. If this was the situation, it would seem to be clear that in going from half to three-quarters of a mile she should have fallen off a sufficient distance to have gone clear. On the other hand, if she

was to the windward of the schooner, and the latter first saw her green light only, it is equally apparent that by porting her helm the bark would run directly across the schooner's bows. That this is what she did is shown by the manner in which the vessels came together. It was after the schooner had luffed up into the wind, and thus changed her course from five to six points, that she struck the bark. As it was, the angle was sufficiently obtuse to render the blow one of great severity. But for her luffing she would have struck nearly at right angles with the bark's hull. This situation was one that seems to me to have been impossible, except upon the theory that the bark ran directly across the bows of the schooner. I have no doubt that the accident arose from the negligence of the lookout on the bark in reporting a red light when he saw only the green light of the schooner.

Upon the whole case I therefore hold—*First*, that the schooner, being close-hauled on the starboard tack, and steering by the wind, had the right of way; and, *second*, that under the situation proved the bark should have put her helm to starboard. In failing to do this she was at fault, and is alone responsible for the collision.

In the case against the schooner, the libel is to be dismissed, with costs; and in the case against the bark, there is to be an interlocutory decree for the libellants.

Ordered accordingly.